# EXHIBIT 1-H

CAUSE NO. 2014-60989

| | | |
|---|---|---|
| ANTHONY G. BUZBEE | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | 234th JUDICIAL DISTRICT |
| GAYLE DICKIE, JASON, | § | |
| VANEMAN, JAMES, | § | |
| ALLEN BRADLEY, | § | |
| WEATHERVANE PRODUCTIONS, INC., | § | |
| FORREST CAPITAL PARTNERS, INC., | § | |
| FORREST CAPITAL AND CO LLC, | § | |
| FIRST CLEARING LLC, | § | |
| WELLS FARGO BANK, N.A., | § | |
| WELLS FARGO | § | |
| ADVISORS, LLC, | § | |
| and HEY GIRL HEY ENTERTAINMENT, | § | |
| LLC/3WAY FILMS | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST
FOR TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFF ANTHONY G. BUZBEE complaining of DEFENDANTS GAYLE DICKIE, JASON, VANEMAN, JAMES, ALLEN BRADLEY, WEATHERVANE PRODUCTIONS, INC., FORREST CAPITAL PARTNERS, INC., FORREST CAPITAL AND CO LLC, FIRST CLEARING LLC, WELLS FARGO BANK, N.A., WELLS FARGO ADVISORS, LLC, and HEY GIRL HEY ENTERTAINMENT LLC/3WAY FILMS, and in support hereof, Plaintiff respectfully shows this Honorable Court the following:

**I.
Summary of the Case**

This is a case for fraud against various Defendants who purport to be in the movie business in California. It is now known that Defendants are charlatans. Defendants convinced

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Plaintiff through lies and deception to invest $1.5 million into a movie. When that movie failed to go forward as promised, Defendants lied again in an attempt to move Plaintiff's monies to another project. Unbeknownst to Plaintiff, most of the representations made by Defendants were utterly false. Plaintiff's monies were actually being used as security, and not for a movie investment. The actors and other individuals who were supposedly involved in the movie really were not. When Plaintiff found out about all of the Defendants' lies and demanded his money back, Defendants continued to delay and refuse to return the monies. Defendants now admit they are wrongfully holding $1.5 million of Plaintiff's monies, but refuse to return the monies. This is not the first time that Defendants have been sued for fraud and wrongfully withholding monies; At least two of the Defendants were sued previously for similar conduct. Plaintiff seeks damages of $1.5 million, along with $5 million in punitive damages, attorneys' fees, and costs to ensure this is the last fraudulent scheme that Defendants will be involved in.

## II.

### Parties

1. Plaintiff is an individual residing in Houston, Texas.

2. Defendants Gayle Dickie and James Allen Bradley are individuals residing in California.

3. Defendant Hey Girl Hey Entertainment, L.L.C. is a limited liability company headquartered in California. This Defendant can be served via its registered agent: Gayle Dickie, 20000 Winnietka Pl, Woodland Hills, CA 91364.

4. Defendant Jason VanEman is an individual residing in Nevada.

5. Defendant Weathervane Productions, Inc. is a corporation headquartered in Nevada. This Defendant can be served via its registered agent: EASTBIZCOM, INC., 5348 Vegas Drive, Las Vegas, Nevada 89108.

6. Defendant Forrest Capital Partners, Inc. is a corporation headquartered in Florida. This Defendant can be served via its registered agent: Benjamin McConley at 401 East Las Olas Blvd., Ste. 130. Ft. Lauderdale, FL 33301.

7. Defendant Forrest Capital And Co LLC, is a corporation headquartered in Florida. This Defendant can be served via its registered agent: Benjamin McConley c/o FCP Holding Co. LLC at 401 East Las Olas Blvd., Ste. 130. Ft. Lauderdale, FL 33301.

8. Defendant First Clearing is a corporation headquartered in Missouri. This Defendant can be served via its registered agent: CSC-Lawyers Incorporating Service Company, 221 Bolivar, Jefferson City, MO 65101.

9. Defendant Wells Fargo Bank, N.A. is a corporation headquartered in California. This Defendant can be served via its registered agent: Corporation Service Company dba CSC - Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.

10. Defendant Wells Fargo Advisors, LLC is a corporation headquartered in Missouri. This Defendant can be served via its registered agent: CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr. Suite 150N, Sacramento, CA 95833

### III.
### Jurisdiction

11. Plaintiff seeks damages that exceed the jurisdictional limits of this Court. This Court thus has subject matter jurisdiction.

12. Defendants travelled to, and committed torts in, Texas. This Court therefore has personal jurisdiction.

### IV.

3

## Venue

13. A substantial part of the events giving rise to Plaintiff's claims occurred in Harris County, Texas. The fraud at issue occurred in Harris County, Texas. Venue is therefore proper.

## V.
## Nature of the Case

14. Plaintiff is an attorney who resides in Houston.

15. Defendants purport to be in the movie business. Defendants Gayle Dickie and James Allen Bradley purport to be producers, and purport to have been involved in multiple movie projects. Hey Girl Hey Entertainment is owned by Dickie and is a corporate vehicle with which she attempts to conduct business.

16. Defendant James VanEman wants to be in the movie business. Ostensibly through a trust, VanEman invests in movies with the hope to become an actor.

17. Defendants approached Plaintiff in Houston in June of 2014. Defendants claimed that they were the producers of a movie entitled "In Light of the Dance." Defendants claimed that they had half of the funding needed to complete the movie ($1.5 million), and needed the other half. Defendants represented that the investment would be 80% insured by Lloyds of London. Defendants further claimed that the movie would be distributed and marketed by Lionsgate. Defendants also claimed that the international dance troupe, Burn the Floor, was "attached" to the movie, and would perform in it. Defendants further claimed that the choreographer of Burn the Floor would be actively involved in the movie. Defendants claimed the filming locations were obtained, and that filming should begin in August 2014.

4

18. Defendants also claimed that they had made an "offer" to Ryan Gosling, and that he was considering being in the movie. Later, Defendants claimed that they were in "discussions" with Justin Timberlake.

19. After several phone conferences, relying on Defendants' representations, Plaintiff agreed to invest in the movie. Defendants represented to Plaintiff that the money needed to be wired immediately because filming would occur in August, and asked Plaintiff to sign a financing agreement.

20. Plaintiff entered into a financing agreement with Defendants Forrest Capital Partners, Inc. and Weathervane Productions, Inc. Plaintiff wired the monies requested into an account controlled by Defendant Wells Fargo Advisors, LLC. First Clearing LLC was a named beneficiary on the account for the wired funds.

21. Almost immediately after wiring the money, Defendants stated that they would be traveling to Canada to meet their Canadian partner. Defendants also claimed that they had set up offices in Canada, and had already started pre-records and sync licensing for the music.

22. Within one month of Plaintiff sending the monies, Defendants began making excuses as to why the previously provided production schedule would not occur. Rather than filming in August, Defendants claimed that the movie now would film in October instead. As the days wore on, Defendants continued to delay. Defendants claimed that there were issues with the writer, and issues with the location. Later, Defendants stated that there were issues with the dance troupe with regard to their schedules. Finally, Defendants offered as an excuse that Justin Timberlake's schedule would not allow the filming until early the next year.

23. By the first week of August, contrary to all of their previous representations, Defendants were asking Plaintiff to "move" the monies to another picture. According to the Defendants, various production delays would prevent the previous movie from going forward as planned. Defendants also represented that, because Justin Timberlake's schedule would not allow filming until April of 2015, they wanted to start on another movie and then start "In Light of the Dance" later.

24. Plaintiff was confused with Defendants seemingly abrupt change of plans. To assuage the Plaintiff, Defendants traveled to Houston to meet with Plaintiff. In that meeting, Defendants represented that the new movie would be better, and that it was already planned and ready to shoot. According to Defendants, if Plaintiff's monies were left in "In Light of the Dance," that movie would not go forward until the next year, and it would be better to put the monies in a movie that was to shoot immediately. At the meeting, Plaintiff instructed Defendants to send the paper work to move the monies so that it could be reviewed, and that Plaintiff would think it over.

25. The next day, Defendants sent Plaintiff a long email again reiterating that the move of the monies was needed immediately, or the project could not go forward. To that email, Plaintiff wrote agreed, and asked to review the formal documentation to make the transfer.

26. While waiting for the formal documentation, Plaintiff received disturbing information. Defendants had been sued for fraud and breach of contract by investors in Hawaii. Much of what the Defendants had represented was demonstrably false. There was no agreement with the international dance troupe. There was no ongoing negotiation with Justin Timberlake. There was no production schedule. The reason Defendants wanted to move

the monies was so they could control the monies themselves, and extricate themselves from the writer of "In Light of the Dance".

27. Upon learning of Defendants' falsities, Plaintiff instructed the Defendants to immediately return his monies. Defendants refused to do so. When Plaintiff informed Defendants that there was no agreement that allowed them to keep his monies, Defendants sent Plaintiff an agreement and pretended that Plaintiff had signed off on it, even though he had never seen it. In fact, in the agreement sent to Plaintiff, there was no mechanism for Plaintiff to obtain any return on the monies; Defendants were attempting to use an email exchange as some sort of agreement to a contract he never saw.

28. As of the filing of this lawsuit, despite repeated assurance for over a month that Plaintiff's monies would be returned, Defendants are still holding Plaintiff's $1.5 million.

## VI.
## Causes of Action

**A.   Fraud/Fraud In The Inducement**

29. Plaintiff incorporates the preceding Paragraphs of this Petition as if set forth in full below.

30. Defendants made multiple, material representations to Plaintiff while in Texas.

31. When Defendants made those representations, Defendants knew they were false, or made such representations recklessly.

32. Plaintiff justifiably relied on Defendants' misrepresentations. Plaintiff has suffered damages as a result.

33. Plaintiff never agreed to the second financing agreement. The first agreement was procured by fraud.

34. Defendants' conduct was willful, purposeful, and malicious such that punitive damages are appropriate.

**B. Conversion**

35. Plaintiff incorporates the preceding Paragraphs of this Petition as if set forth in full below.

36. Defendants have wrongfully taken dominion and control over monies that are rightfully the Plaintiff's.

37. As a result of Defendants' conversion, Plaintiff have suffered significant damages. Because of the nature of Defendant's actions, Plaintiff seeks an award of punitive damages.

38. Defendants' conduct constitutes constructive fraud. Plaintiff therefore seeks a constructive trust over those monies wrongfully held by Defendant.

**C. Declaratory Judgment**

39. Plaintiff seeks a declaratory judgment from this Court that the second financing agreement is not operative; that is, Plaintiff never agreed to such and it has no force and effect. Further, Plaintiff seeks a declaration from this Court that the "Settlement Agreement" executed by Plaintiff is not operative or binding because Defendants failed to comply with it, and thus if fails for lack of consideration. Further, Defendants knew when it signed said agreement that they would not return monies within 48 hours as stated therein. Plaintiff seeks attorneys' fees related to this cause of action.

**VII.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

In order for Plaintiff to properly investigate their claims, pursue their claims, recover their

8

damages and see that justice is done; this Court should restrain the Defendant, its agents, servants, employees, contractors, contract employees, attorneys and those acting in concert with Defendant from transferring, withdrawing, and/or moving any of the funds at issue in this incident.

Plaintiff seeks a writ of temporary injunction ("TRO") according to Section 65.011 of the Texas Civil Practice and Remedies Code, which provides that, "a writ of injunction may be granted if:

(1) The applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

(2) a party performs or is about to perform or is procuring or allowing performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

(3) the application is entitled to a writ of injunction under the principle of equity and the statutes of this state relating to injunctions;

(4) (not applicable) or;

(5) Irreparable injury to real or personal property is threatened, irrespective of any remedy at law."

TEX. CIV. PRAC. & REM. CODE § 65.011.

A temporary injunction will issue on proof of a probable right on final trial to the relief sought, probable injury in the interim, and no adequate remedy at law. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). The trial court has broad discretion in considering a request for a temporary restraining order or temporary injunction. *Liberty Mut. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.--Houston [14th Dist.] 1991, no writ). At a temporary injunction hearing, the only issue before the trial court is whether the status quo should be preserved pending trial on the merits. *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d

517, 519 (1961); *Ramsey v. Lewis*, 874 S.W.2d 320, 322 (Tex. App.--El Paso 1994, no writ).

Plaintiff has pled facts demonstrating the necessary elements of conversion for an injunction to issue. The elements of conversion are:

(1) The plaintiff owned, possessed, or had the right of immediate possession of the property,

(2) The defendant wrongfully exercised dominion or control over the property to the exclusion of and inconsistent with the plaintiff's rights,

(3) The plaintiff demanded return of the property, and

(4) The defendant failed to return it.

*Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, pet. denied). As Demonstrated in the First Amended Petition, the elements of conversion are properly pled.

Plaintiff seeks TI to prevent Defendants, their agents or employees from improperly moving, hiding, transferring, or withdrawing funds held in the Wells Fargo bank account where the funds were placed as part of the original financing agreement.

1. **Wrongful Act**

The first element to establish the need for a TRO and TI is the existence of a wrongful act. To do this, the plaintiff need only plead a cause of action against the defendant. *See Walling v. Metcalfe*, 863 S.W.2d at 57. Plaintiff has asserted a variety of causes of action against Defendants. This element is satisfied.

2. **Probable recovery**

The second element to establish the need for a TRO and temporary injunction is to show a probable right of recovery. The standard is whether the applicant has a cause of action for which they may be granted relief. *Walling*, 863 S.W.2d at 58; *Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.--Austin 2000, no pet.). The applicant is not required to establish that he will prevail at trial. *Walling*, 863 S.W.2d at 58. Plaintiff has shown that, if Defendant is permitted to transfer or withdraw these funds for any purpose other than repaying Plaintiff, Plaintiff will undoubtedly have a probable, if not certain, right of recovery.

### 3. Probable Injury

The third element to establish the need for a TRO is to show a "probable injury." "Probable injury" includes elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *See Inex Indus., Inc. v. Alpar Resources, Inc.*, 717 S.W.2d 685, 687-88 (Tex. App.--Amarillo 1986, no writ). These three sub-elements are discussed below.

#### a. Imminent Harm

As shown above, Defendant has demonstrated intent to harm Plaintiff by improperly withholding these funds from Plaintiff, withdrawing the funds, transferring the funds, or using the funds to finance other projects.

#### b. Irreparable Injury

A plaintiff seeking to enforce a statutory right to an injunction is not required to prove irreparable injury. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002). In any event, Plaintiff will be irreparably harmed if a TRO and TI are not issued. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773

S.W.2d 398, 401 (Tex. App.--Dallas 1989, no writ). While Plaintiff would certainly be able to recover some measure of damages from Defendant's conversion, such damages would not fully compensate Plaintiff for the all of the damage which would result if Defendants are not restrained.

   c. <u>No Adequate Remedy at Law</u>

For a legal remedy to be adequate, it must complete, final, and equal relief. *Universal Health*, 24 S.W.3d at 577. Again, while Plaintiff would certainly be able to recover some measure of damages from Defendants' conversion, such damages would not fully compensate Plaintiff for the all of the damage which would result if Defendants are not restrained.

In light of the foregoing, Plaintiff seeks temporary and permanent injunctive relief, and requests that the Court issue a TI:

Temporarily restrains, and enjoined Defendants from, in any way from moving, transferring, changing, altering, withdrawing, disposing of, any funds held in the Wells Fargo Bank Account #4122023377, were the initial transfer of funds took place, pending further hearing on the temporary injunction;

And

Temporarily restrains and enjoins Defendants from, in any way, from moving, transferring, changing, altering, withdrawing, disposing of, any of Plaintiff's funds made part of the original financing agreement, pending further hearing on the temporary injunction;

And

Temporarily restrains and enjoins Defendants First Clearing LLC, Forrest Capital Partners, Inc., Forrest Capital & Co, and Weathervane Productions, Inc. from, in any way, from moving, transferring, changing, altering, withdrawing, disposing of, any funds in Wells Fargo

Bank Account maintained and controlled by Defendant Wells Fargo Bank NA or Wells Fargo Financial Advisors, LLC, or any other related Wells Fargo entity, pending further hearing on the temporary injunction;

And

After additional hearing, the Court continue its Order for a mandatory temporary injunction, ordering and directing that the funds in the account maintained and preserved as it presently exist.

## VIII.
## Prayer

40. Upon trial of this matter, Plaintiff respectfully requests:

   a. Damages proximately caused by Defendant's wrongful conduct in an amount to be proved, but no less than $1.5 million;

   b. Attorneys' fees of at least $250,000, and costs of court;

   c. Punitive damages of at least $5,000,000; and

   g. Any other and further relief to which Plaintiff shows himself to be justly entitled, either at law or in equity.

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By:     /s/ Anthony G. Buzbee
         Anthony G. Buzbee
         State Bar No. 24001820
         J.P. Morgan Chase Tower
         600 Travis, Suite 7300
         Houston, Texas 77002

Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEY FOR PLAINTIFF**

CAUSE NO. 2014-60989

| | | |
|---|---|---|
| ANTHONY G. BUZBEE | § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| | § | 234th JUDICIAL DISTRICT |
| GAYLE DICKIE, JASON, VANEMAN, JAMES, ALLEN BRADLEY, WEATHERVANE PRODUCTIONS, INC., FORREST CAPITAL PARTNERS, INC., FORREST CAPITAL AND CO LLC, FIRST CLEARING LLC, WELLS FARGO BANK, N.A., WELLS FARGO ADVISORS, LLC, and HEY GIRL HEY ENTERTAINMENT, LLC/3WAY FILMS | § § § § § § § § § § § § § | |
| Defendants. | § § | **JURY TRIAL DEMANDED** |

**FILED**
Chris Daniel
District Clerk
NOV 1 9 2014
Time: 10:28 A.M.
Harris County, Texas
By_____ Deputy

Verification

STATE OF TEXAS        )
                      )
COUNTY OF HARRIS      )

On this day Anthony Glenn Buzbee, personally known to me, appeared before me and swore upon his oath the following:

1. My name is Anthony Glenn Buzbee. I am over the age of eighteen and fully competent to make this affidavit in every way.

2. I have reviewed the attached First Amended Petition and Application for Restraining Order in its entirety. All facts stated therein are within my personal knowledge and are true and correct.

Further affiant sayeth not.

_____
Anthony Buzbee

11-18-2014
Date


LETICIA DE LA CRUZ-NARVAEZ
My Commission Expires
March 5, 2017

_____
Notary in and for the State of Texas

1